IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| SHARI CHASE : <br> 6929 TOWERING OAK PATH : <br> COLUMBIA, MARYLAND 21093 : <br>   : <br> Plaintiff, : <br>   : <br> v.   : <br>   : <br> UNITED BIOLOGICS, LLC : <br> D/B/A/ UNITED ALLERGY SERVICES : <br> 10250 JOHN SAUNDERS : <br> #790009 : <br> SAN ANTONIO, TX 78279 : <br>   : <br> Serve:  CSC LAWYERS, INC : <br>          7 St. Paul Street, Suite 820 : <br>          Baltimore, MD 21201 : <br>   : <br> Defendant. : | Civil Action No._____ |

## COMPLAINT

Plaintiff, Shari Chase by and through his undersigned counsel hereby sues United Biologics, D/B/A United Allergy Services for violation of Title VII of the Civil Rights Act of 1964 and Md. Code Ann. [St. Gov.] 20-601, et seq. for discrimination and wrongful termination on the basis of religion.

## PARTIES

1. Plaintiff is an adult resident of the State of Maryland. At all times relevant to this cause of action, Plaintiff was an employee of Defendant working primarily in Montgomery and Prince George's County, Maryland.

2. Defendant is a Texas based LLC engaged in the business of providing medical services and products for individuals suffering from various allergies that regularly conducts and transacts business in Maryland, including in Montgomery and Prince George's Counties.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 as a federal question, arising under the laws of the United States.

4. Defendant is subject to jurisdiction in this District as it regularly transacts business in the State of Maryland.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391(c) as the Defendant is regularly engaged in business in the State of Maryland.

## FACTS OF THE CASE RELEVANT TO ALL COUNTS

6. Ms. Chase was hired by United Allergy as the Account Executive for the District of Columbia, Maryland, and Virginia region on around December 16, 2019, and started work on or around January 6, 2020.

7. Ms. Chase is Jewish and over 40 years old.

8. Ms. Chase came to United Allergy seven years' experience as a Medical Representative and prior to that, was a Healthcare and Networking Consultant for over twenty years. Ms. Chase has a Bachelor of Science in Pharmacology and Education and has volunteered in healthcare organizations for almost a decade.

9. United Allergy hired Ms. Chase after multiple rounds of interviews and then ensured she began an onboarding program that included training in the field.

10. After two weeks training in the field, Ms. Chase flew to San Antonio, Texas, to continue her training. During Ms. Chase's training, Cory James, United Allergy's Strategic Sales

Marketing Specialist and Manager, made a number of comments about how the majority of employees were "millennials," and that the office "catered" to millennials.

11. The next morning, Mike Malec, the National Sales Director and Vice President – and Ms. Chase's direct supervisor in Maryland -- joined Ms. James in leading the training.

12. During the training, Ms. Chase raised the possibility of creating engaging speaker events, suggesting the company's medical director as a possible speaker.

13. Ms. James replied that he could not speak because he was an "old Jewish man" and "old Jewish men can't speak," or words to that effect.

14. That night at dinner, Ms. Chase's colleagues shared photos of their families.

15. Ms. Chase shared a photo of her family at her synagogue, to which Ms. James immediately replied in an accusatory and shocked tone, "We did not know you were Jewish. You are Jewish. We had absolutely no idea that you were Jewish," or words to that effect.

16. During dinner, Ms. James also told Ms. Chase, "Most of the people here are millennials and you are so much older," or words to that effect.

17. Ms. Chase was distressed and offended by the continued comments about her age and religion. After dinner, Mr. Malec told the team they would begin training early again in the morning. "I will be early," Ms. Chase said, to which Mr. Malec snidely replied, "Of course you will."

18. The next morning Ms. Chase arrived on time for training. Mr. Malec and Ms. James arrived late.

19. Training began, and during the course of training Ms. James and Mr. Malec showed Ms. Chase a PowerPoint presentation. The presentation referenced a character from an old television show from the 1950's or 1960's.

20. Ms. Chase told Ms. James and Mr. Malec she watched the show as a child. Ms. James said, "You are so old. You are so fucking old. I cannot believe how old you are. I had no idea . . . we had no idea that you were this fucking old," or words to that effect.

21. Shortly thereafter, Mr. Malec suddenly left the room and returned with Lindsay Alford from Human Resources.

22. Ms. Alford then, without warning, terminated Ms. Chase on the spot, telling her that she was "not the right fit for United Allergy," or words to that effect.

23. Shocked, Ms. Chase replied, "I understand what you are saying, but . . . I would be an excellent employee here and help you achieve your mission, increase your sales, and help those who have allergy symptoms have better lives," or words to that effect.

24. Ms. Alford reiterated that Ms. Chase was, "not the right fit for United Allergy." Mr. Malec also reiterated that Ms. Chase was "not right" for the job.

25. Ms. Chase was told to return United Allergy documents and return home on a flight in two hours.

26. Ms. Chase asked for a later flight so she could take more time to pack her weeks' worth of belongings, but was refused. She left in shock and extremely distressed.

27. Ms. Chase complained to Mr. Malec, and asked for an explanation for her termination, to which he replied, "No matter what you bring in, they will fire you after two weeks, because you are not a good fit for United Allergy," or words to that effect.

28. Ms. Chase also complained to David Boone, the CEO of United Allergy, about her wrongful termination.

29. Ms. Chase is informed and believes that nothing was done to investigate or correct the illegal discrimination.

30. Ms. Chase also complained to several other executives and managers, but received no response from them.

31. Ms. Chase received an email regarding her complaints from the Director of Human Resources stating that "our employees are not allowed to discuss employment situations with former employees," however, nothing was done to investigate, prevent, and/or correct the illegal discrimination and/or retaliation.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

32. On or about July 10, 2020, Plaintiff filed a Charge with the Equal Employment Opportunity Commission, Charge No. 531-2020-1461.

33. On or about May 19, 2021, EEOC issued a Right to Sue Letter.

34. On August 16, 2021, in accordance with her Agreement to Arbitrate, Plaintiff filed a Demand for Arbitration with the American Arbitration Association, ADR Case 01-21-0016-1703.

35. AAA provided notice to Defendant on August 21, 2021 of Plaintiff's filing of her Demand for Arbitration.

36. Defendant did not respond to AAA.

37. On September 9, 2021, AAA sent a second notice to Defendant.

38. On October 19, 2021, AAA dismissed the case for Defendant's failure to respond and to pay Defendant's share of the costs associated with the arbitration.

## COUNT I
## RELIGIOUS DISCRIMINATION AGAINST PLAINTIFF
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

39. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

40. Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, other otherwise to discriminate against an employee with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion."

41. Defendant terminated Plaintiff on the basis of her religion.

42. Plaintiff has suffered and continues to suffer harm and damages as a direct and proximate result of the Defendant's religious based discrimination.

### COUNT II
### VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
### 29 U.S.C. §621, et seq.

43. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

44. This action is brought pursuant to the Age Discrimination Employment Act of 1967, as amended, 29 U.S.C. § 621, et. seq., for discrimination on the basis of age.

45. The aforesaid discriminatory treatment by Defendant toward Plaintiff caused tangible harm to Plaintiff in that they affected the terms, conditions and privileges of her employment.

46. A causal connection exists between Defendant's actions in terminating Plaintiff and Plaintiff's age.

47. Defendant's aforementioned conduct and illegal action toward Plaintiffs reflect directly on a discriminatory attitude toward Plaintiff based on age.

48. Defendant's actions constituted a violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et. seq.

49. In addition to the above, Plaintiff also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, loss of income and other damages.

50. Defendant's conduct was malicious, willful, and intentional.

### COUNT III
### RELIGIOUS DISCRIMINATION and AGE DISCRIMINATION AGAINST PLAINTIFF IN VIOLATION OF MD. CODE ANN. [ST. GOV.] 20-601, ET SEQ.

51. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

52. Pursuant to Md. Code Ann. [St. Gov.] 20-606, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, other otherwise to discriminate against an employee with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion."

53. Defendant terminated Plaintiff on the basis of her religion.

54. Plaintiff has suffered and continues to suffer harm and damages as a direct and proximate result of the Defendant's religious based discrimination.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendant on Counts I-III of the Complaint.

B. Award Plaintiff economic damages in an not less than $75,000.00, compensatory damages in the amount of $300,000.00 or such other amount as established at the trial of this matter and punitive damages in the amount of $300,000.00 or such other amount as this Court deems necessary based upon the facts and circumstances of this case.

C. Award Plaintiff all of her attorneys' fees and costs associated with this matter.

      D.      Grant such other and further relief as this Court deems necessary based upon the facts and circumstances of this case.

JURY TRIAL

Plaintiff respectfully requests that this matter be tried by a jury.

        Respectfully Submitted,

        /s/ Neil S. Hyman
        Neil S. Hyman, Esquire
        Bar No. 15158
        Law Office of Neil S. Hyman, LLC
        4520 East West Highway, Suite 700
        Bethesda, Maryland 20814
        (301) 841-7105
        neil@neilhymanlaw.com